# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| RIGEL HARRIS,<br>    *Plaintiff*<br><br>v.<br><br>THOMAS J. HENRY, individually;<br>THOMAS J. HENRY LAW, PLLC;<br>ROBERT T. HERRERA, individually;<br>and GRAY PICTURE, LLC,<br>    *Defendants* | §<br>§<br>§<br>§<br>§   **Case No. 1:22-cv-00366-LY**<br>§<br>§<br>§<br>§ |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE HONORABLE LEE YEAKEL**
        **UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants Thomas J. Henry and Thomas J. Henry Law, PLLC's Motion for Sanctions, filed June 14, 2022 (Dkt. 4); Defendants Thomas J. Henry and Thomas J. Henry Law, PLLC's Motion to Dismiss, filed June 14, 2022 (Dkt. 5); Defendants Robert T. Herrera and Gray Picture, LLC's Motion to Dismiss, filed July 28, 2022 (Dkt. 18); and the associated response and reply briefs. The District Court referred the motions and related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 16; Dkt. 21.

## I. Background

Plaintiff Rigel Harris, an actress who lives in Brooklyn, New York, brings this suit against her alleged employers based on her allegation that she was sexually assaulted by director and filmmaker Robert T. Herrera while they were filming a documentary movie in Austin, Texas.[1]

---

[1] Plaintiff is a New York resident and Herrera is a Missouri resident. Dkt. 1 ¶¶ 17, 21.

Complaint, Dkt. 1 ¶ 1. Plaintiff alleges that Thomas J. Henry, a Texas personal injury attorney, hired Herrera and his production company, Gray Picture, LLC, to make a documentary film about an art and music festival Henry sponsored called "Austin Elevates," which took place in Austin in November 2019. *Id.* ¶¶ 22-23. Plaintiff alleges that Herrera has "long-served as the *de facto* house filmmaker for Thomas J. Henry, having filmed footage for advertisements and notably having directed Defendant Henry's YouTube reality series *Hangin' with Los Henrys*." *Id.* ¶ 24.

Plaintiff, who had worked with Herrera before, alleges that Herrera contacted her a week before the festival to offer her "temporary employment assisting him in filming the festival." *Id.* ¶ 25. Plaintiff alleges that: "During the process of negotiating the terms of Ms. Harris's employment on the film, Defendant Herrera repeatedly indicated that he needed approval from Thomas J. Henry regarding whether the budget allowed for Ms. Harris to be hired as a Production Assistant and/or Assistant Camera operator." *Id.* ¶ 27. Plaintiff contends that Herrera also told her that "Thomas J. Henry had not afforded a sufficient budget to pay for a hotel room for her," and "suggested that she personally book an AirBnB, which he said would be reimbursed later." *Id.* ¶ 26. Herrera explained that Henry booked and paid for all travel arrangements for the film crew, and that she would not be provided with a hotel room because "Gray Picture was 'getting a little pushback on our crew accommodations' from Thomas J. Henry." *Id.* ¶ 28. Plaintiff accepted the job offer, "eager for experience working with the state-of-the-art cameras to be used in production." *Id.* ¶ 26. Plaintiff alleges that she later learned that, before she arrived in Austin, "Herrera boasted widely to production coworkers and others at the festival that despite his request that she book an AirBnB, Ms. Harris would ultimately 'be staying in his hotel room.'" *Id.* ¶ 29.

Plaintiff alleges that after she arrived in Austin, Herrera encouraged her to cancel her AirBnB booking and use the sleeper sofa in his hotel suite instead. *Id.* ¶ 31. "At Defendant Herrera's urging,

2

Ms. Harris agreed to cancel her AirBnB and move[d] into Defendant Herrera's room for her second night in Austin, November 6, 2019." *Id.* Plaintiff alleges that Henry paid for Herrera's hotel suite. *Id.* ¶ 36.

On the evening of November 6, 2019, Plaintiff, Herrera, and the rest of the film crew "celebrated what was to be a late start the next day by going out in downtown, Austin." *Id.* ¶ 33. Plaintiff alleges that during this celebration, which Henry allegedly paid for, Herrera bought her numerous drinks and she became extremely intoxicated, telling Herrera at one point: "I'm so drunk. I never drink this much." *Id.* 34. Around 2:30 the next morning, Plaintiff alleges that she attempted to go get food with another member of the film crew, but Herrera stopped her and said: "No, you're too drunk. Come home," and then led Plaintiff back to his hotel room. *Id.* ¶ 35.

Once they arrived at the hotel, Plaintiff alleges that she began drinking water and eating food from the hotel snack bar in an effort to regain her sobriety. *Id.* ¶ 36. After Plaintiff told Herrera that she was going to go to bed, Herrera told her that she could sleep in his bed instead of the sleeper sofa. *Id.* Plaintiff got into the bed "fully clothed" and "lost consciousness." *Id.* ¶¶ 36, 37.

Plaintiff alleges that she awoke to "Herrera pulling her pants down and penetrating her digitally and orally without her consent." *Id.* ¶ 38. Plaintiff alleges that she told Herrera: "I do not want to have sex with you," to which Herrera replied: "I'm in love with you and have been since I met you. If I met you five years earlier, my whole life would be different." *Id.* ¶ 39. Plaintiff alleges that Herrera then said: "Listen, after this, depending on how things go, either you'll do the movie, or you won't do the movie." *Id.* ¶ 40. Plaintiff "understood this as a *quid pro quo* proposal in regard to Defendant Herrera's upcoming film project, *Pink Casa*." *Id.* Plaintiff alleges that Herrera had told her that he "hoped to cast" Plaintiff in the movie to portray a character named Rigel, which was "transparently based" on Plaintiff. *Id.* Plaintiff alleges that she "understood that Defendant

3

Herrera was suggesting that whether she acquiesced or at least did not report his assaults would determine her fate with that project." *Id.*

Plaintiff alleges that after this exchange, Herrera began to fall asleep, and she walked into the other room and began to charge her cell phone, which had died. *Id.* ¶ 41. As she was charging her phone, Plaintiff alleges, Herrera appeared and "began to assault her again." *Id.* ¶ 42. Plaintiff says that she then shoved Herrera away and said: "I'm done, my vagina is done," to which Herrera replied: "Now I feel nervous." *Id.* Plaintiff alleges that she then ran to the hotel's front desk and reported the assault. *Id.* ¶ 43.

Plaintiff alleges that Herrera was arrested and questioned by the Austin Police Department. *Id.* She further alleges that she underwent an examination by a Sexual Assault Nurse Examiner, with help from the SAFE Alliance, which provided counseling and helped her book her return plane ticket. *Id.* ¶ 44. Plaintiff flew back to New York on November 8, 2019. *Id.* ¶ 45. She alleges that she was unable to work for several months due to "anxiety and trauma from her assault." *Id.* ¶ 49. She further alleges that she was "frightened and anxious at the prospect of working under male directors or being alone with men in positions of power in the film and theater world," *id.* ¶ 48, and has stopped working as an actress entirely, *id.* ¶ 50.

On April 15, 2022, Plaintiff filed this lawsuit against Herrera, Gray Picture, Henry, and Henry's law firm, Thomas J. Henry Law, PLLC. (For ease of reference, the Court refers to Herrera and Gray Picture, LLC, collectively, as the "Herrera Defendants"; and to Henry and Thomas J. Henry Law, PLLC, collectively, as the "Henry Defendants.")

In her Complaint, Plaintiff alleges:

- General negligence, negligence based on an unsafe workplace, premises liability, and forced labor and sex trafficking, in violation of the Trafficking Victim's Protection Reauthorization Act, 18 U.S.C. §§ 1589, 1591, and § 98.001 of the Texas Civil Practices and Remedies Code, against all Defendants;

4

- negligent hiring, supervision, and retention against the Henry Defendants and Gray Picture; and

- assault against Herrera.

All Defendants move to dismiss Plaintiff's claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] The Henry Defendants also move for sanctions under Federal Rule of Civil Procedure 11.

## II. Legal Standard

"A motion to dismiss for failure to state a claim concerns the formal sufficiency of the statement of the claim for relief, not a lawsuit's merits." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (internal citation and quotations omitted). Therefore, in reviewing a Rule 12(b)(6) motion to dismiss, the court must "assume that the facts the complaint alleges are true and view those facts in the light most favorable to the plaintiff." *Id.* The complaint survives if it contains sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although this framework is one-sided, the issue is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support his claims." *Sewell*, 974 F.3d at 582 (citations omitted).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). "When a defendant attaches documents to its motion that are referred to

---

[2] Herrera does not move to dismiss Plaintiff's assault claims.

5

in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Id.* But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). A motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III.  Motions to Dismiss

For each of Plaintiff's claims, the Court considers whether she has alleged sufficient facts to state a claim for relief that is plausible on its face.

### A.  Trafficking Claims

The Trafficking Victim's Protection Reauthorization Act ("TVPRA") prohibits various forms of human trafficking, including involuntary servitude, forced labor, and sex trafficking. 18 U.S.C. §§ 1581-92. An individual who is a trafficking victim

> may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C.A. § 1595(a) (2018). Similarly, § 98.002 of the Texas Civil Practice and Remedies Code creates a civil cause of action against anyone "who intentionally or knowingly benefits from participating in a venture that traffics another person." TEX. CIV. PRAC. & REM. CODE § 98.002(a). Plaintiff alleges that Defendants violated the forced labor and sex trafficking provisions of the TVPRA and the Texas statute.

#### 1.  Forced Labor

The forced labor provision of the TVPRA provides:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm[3] or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or restraint,
>
> shall be punished as provided under subsection (d).

18 U.S.C. § 1589(a) (2008).[4] Thus, to state a claim under §1589(a), a plaintiff must adequately plead that the defendant (1) provided or obtained the labor or services of plaintiff (2) "by means of" one of the enumerated means, and (3) did so "knowingly." *United States v. Toure*, 965 F.3d 393, 400 (5th Cir. 2020).

Plaintiff alleges that the Herrera Defendants "forced her to work for them through threats of serious harm," in violation of §1589(a)(2). Dkt. 20 at 13. Specifically, Plaintiff alleges that after she began working for Herrera, he made a threat of serious harm by telling her during the alleged sexual assault that, "depending on how things go, either you'll do the movie, or you won't do the

---

[3] Serious harm is defined as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* at § 1589(c)(2).

[4] The TVPRA further provides that:

> Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

*Id.* at § 1589(b).

movie." Dkt. 1 ¶ 40. Plaintiff says she interpreted this comment as a threat that Herrera would not hire her on his new film project, *Pink Casa*, unless she acquiesced to his advances. *Id.*

The Court concludes that Plaintiff's allegations do not amount to a violation of § 1589(a). As stated, the TVPRA bars a defendant from obtaining the labor or services of a person "by means of" serious harm or threats of serious harm. 18 U.S.C. § 1589(a)(2). "[T]he phrase 'by means of' refers to familiar principles of causation and requires a proximate causal link between one or more of the unlawful means enumerated in § 1589(a) and the labor actually obtained." *Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1155 (9th Cir. 2022).

Plaintiff does not allege that Herrera obtained her labor "by means of" a threat of serious harm. Rather, she alleges that Herrera contacted her a week before the festival to offer her the job and told her that the budget for the film was tight, and that her hotel room may not be paid. Dkt. 1 ¶¶ 25, 27. Plaintiff alleges that she accepted the job offer because she was "eager for experience working with the state-of-the-art cameras to be used in production." *Id.* ¶ 26. Plaintiff does not allege that Herrera or anyone else made any threats to her to obtain her labor. *See Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1179-80 (9th Cir. 2012) (holding that plaintiffs failed to show their labor was obtained "by means of" force or threats where record showed plaintiffs joined and voluntarily worked for defendant "because they believed that it was the right thing to do, because they enjoyed it, and because they thought that by working they were honoring the commitment that they each made and to which they adhered"). Plaintiff instead alleges that a threat of serious harm was made after she began working for Herrera.

In addition, Plaintiff does not allege that Herrera's threat was made to get her "to perform or to continue performing labor or services in order to avoid incurring that harm," 18 U.S.C. § 1589(c)(2), but rather to "acquiesce[ ] to his unwanted sexual contact." Dkt. 20 at 13. While this

8

alleged threat may violate other laws and statutes, it is not a violation of § 1589(a). Accordingly, Plaintiff's § 1589(a) claims against the Herrera Defendants fail. Without an underlying violation of § 1589(a), the Henry Defendants cannot be liable under § 1589(b).

For the same reasons, Plaintiff's forced labor claims under § 98.002 of the Texas Civil Practice and Remedies Code also fail. *See In re Facebook, Inc.*, 625 S.W.3d 80, 96 (Tex. 2021) (observing that § 98.002 "closely resembles" the TVPRA and relying on federal law to interpret that statute), *cert. denied*, 142 S. Ct. 1087 (2022).

### 2. Sex Trafficking

Plaintiff also alleges that Herrera violated § 1591(a)(1) of the TVPRA, which applies to direct violators, and that the Henry Defendants and Gray Picture violated § 1591(a)(2), which applies to participants. Section 1591(a) of the TVPRA provides, in relevant part:

> Whoever knowingly –
>
> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> > knowing, or, . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion[5] . . . or any combination of such means will be used to cause the person to engage in a commercial sex act, . . . shall be punished as provided in subsection (b).

---

[5] "Coercion" is defined as "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process." *Id.* at § 1591(e)(2). "Serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." *Id.* at § 1591(e)(5).

9

18 U.S.C. § 1591(a) (2018). The statute defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." *Id.* at § 1591(e)(3). Defendants argue that Plaintiff has failed to allege sufficient facts to show a violation of § 1591.

### a. Section 1591(a)(1)

Plaintiff alleges that "Defendant Herrera knowingly caused Ms. Harris to engage in a commercial sex act by means of serious harm or threats of serious harm to Ms. Harris . . . or by means of any scheme, plan, or pattern intended to cause Ms. Harris to believe that, if she did not perform the commercial sex act, she or another person would suffer serious harm." Dkt. 1 ¶ 91. Herrera argues that Plaintiff's claim under § 1591(a)(1) fails because she does not allege that a "sex act occurred in exchange for anything of value or was induced based upon anything of value." Dkt. 18 at 15. Herrera is mistaken.

As discussed in detail above, Plaintiff alleges that Herrera attempted to coerce her into performing a sex act in exchange for a starring role in his next film project. Courts have found that promises of future film roles qualify as something of "value" under §1591(e)(3). As the United States District Court for the Southern District of New York reasoned:

> For an aspiring actress, meeting a world-renowned film producer carries value, in and of itself. The opportunity, moreover, for the actress to sit down with that producer in a private meeting to review her film reel and discuss a promised film role carries value that is career-making and life-changing.
>
> The contention, therefore, that [the plaintiff] was given nothing of value—that the expectation of a film role . . . had no value—does not reflect modern reality.

*Noble v. Weinstein*, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018); *see also Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019) (holding that "the TVPA extends to enticement of victims by means of fraudulent promises of career advancement, for the purpose of engaging them in consensual or, as alleged here, non-consensual sexual activity"). Because

10

Plaintiff does in fact allege that a sex act occurred in exchange for something of value, Plaintiff has alleged a plausible claim under § 1591(a)(1) against Herrera. For the same reasons, Plaintiff's claims under § 98.002 against Herrera survive. *In re Facebook*, 625 S.W.3d at 96.

### b. Section 1591(a)(2)

Plaintiff alleges that Gray Picture and the Henry Defendants violated § 1591(a)(2) by "knowingly benefit[ing] financially and/or by receiving value from their participation in a venture in which a commercial sex act was obtained . . . knowing or in reckless disregard of the fact that the venture had engaged in the providing or obtaining of a commercial sex act by any such means." Dkt. 1 ¶ 92. To state a financial beneficiary claim against Defendants, Plaintiff must allege facts from which it can be reasonably inferred that they "(1) knowingly benefitted financially or by receiving anything of value, (2) from participation in a venture, they (3) knew or should have known has engaged in sex trafficking under § 1591." *E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 426 (N.D. Tex. 2021) (cleaned up).

Gray Picture argues that Plaintiff has failed to allege sufficient facts indicating that it knew or had to reason to know that Herrera was facilitating a commercial sex act. Dkt. 18 at 15. Because liability under § 1591(a)(2) "cannot be established by association alone," Plaintiff must allege facts showing that Gray Picture was aware of the sex trafficking venture. *Noble*, 335 F. Supp. 3d at 524. Here, Plaintiff alleges that Herrera is the owner and principal of Gray Picture, and that Herrera coerced Plaintiff to perform a commercial sex act by promising something of value to her. Because Herrera is the owner and operator of Gray Picture and is alleged to have personally committed the sexual assault, Gray Picture had constructive knowledge of the sexual assault. *See Geiss*, 383 F. Supp. 3d at 169 (noting that there must be "constructive knowledge" of sex trafficking venture). Accordingly, Plaintiff has alleged sufficient facts to state a plausible claim that Gray Picture knew of the commercial sex act venture. *See Canosa v. Ziff*, No. 18-Civ.-4115-PAE, 2019 WL 498865,

11

at *24 (S.D.N.Y. Jan. 28, 2019) (denying motion to dismiss claims under § 1591(a)(2) against Harvey Weinstein's companies where plaintiff alleged that those companies' employees actively participated in commercial sex act venture). For the same reasons, Plaintiff's claims under § 98.002 against Herrera also survive. *In re Facebook*, 625 S.W.3d at 96.

In support of her claim that the Henry Defendants "knowingly" benefitted from the sex trafficking of Plaintiff, Plaintiff alleges that: (1) the Henry Defendants managed the film, including its budget (Dkt. 1 ¶¶ 6, 8); (2) Henry booked and paid for all Herrera's travel, including his hotel room (*id.* ¶¶ 28, 36); (3) Henry visited the set "and met Ms. Harris and other members of the film crew" (*id.* ¶ 32); (4) Henry paid for the film crew's celebratory night on the town (*id.* ¶ 33); and (5) before she arrived in Austin, "Herrera boasted widely to production coworkers and others at the festival that despite his request that she book an AirBnB, Ms. Harris would ultimately 'be staying in his hotel room.'" *Id.* ¶ 29.

While these allegations support a finding that the Henry Defendants were actively involved in the film and were aware that Plaintiff was working on the set, they do not show that the Henry Defendants knew or should have known that Herrera was engaged in the alleged sex trafficking of Plaintiff. *See S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA.") Accordingly, Plaintiff fails to allege a plausible claim against the Henry Defendants under § 1591(a)(2) and § 98.002. *In re Facebook*, 625 S.W.3d at 96.

### B. Unsafe Workplace Negligence

Plaintiff alleges that Defendants, as joint employers, owed a duty of reasonable care to provide her with a reasonably safe work environment and that Defendants breached that duty, causing her

to suffer damages. Dkt. 1 ¶¶ 57-59. To establish negligence under Texas law, a plaintiff must prove that (1) the defendant had a legal duty, (2) the defendant breached that duty, and (3) damages proximately resulted from that breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curium). "Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." *Id.* Once a duty has been established, "the questions of breach and proximate cause are ordinarily questions of fact for the jury." *Sena v. Landstar Transp. Logistics, Inc.*, No. EP-14-CV-464-KC, 2015 WL 3454432, at *3 (W.D. Tex. May 28, 2015).

Herrera argues that Plaintiff's unsafe workplace claim against him individually fails because it is "premised on allegations of illegal and assaultive conduct" and is not a negligence claim. Dkt. 18 at 17. The Court agrees that this claim is duplicative of Plaintiff's assault claims against Herrera and based on the same conduct, and therefore recommends that it be dismissed as duplicative.[6]

Gray Picture argues that Plaintiff's unsafe workplace claim fails because Plaintiff has not demonstrated that it owed her a legal duty or that it breached that duty. But the Texas Supreme Court has held repeatedly that "[a]n employer has a duty to use ordinary care in providing a safe workplace." *Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curium); *accord Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995) ("Although an employer is not an insurer of his employees' safety at work, an employer does have a duty to use ordinary care in providing a safe work place."). Plaintiff alleges that Gray Picture was her employer, it owed her a duty to provide her with a safe workplace, and it breached that duty when Herrera sexually assaulted her after a work function.

---

[6] In Texas, to prevail on a claim for civil assault, the plaintiff must establish the same elements required for criminal assault. *Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011). A defendant commits assault if he (1) "intentionally, knowingly, or recklessly causes bodily injury to another"; (2) "intentionally or knowingly threatens another with imminent bodily injury"; or (3) "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE ANN. § 22.01 (West 2021).

The fact that the sexual assault did not take place on the film set is not fatal to Plaintiff's claim. *See Wesler v. VP Racing Fuels, Inc.*, No. 1:20-CV-176-RP, 2021 WL 4053415, at *5 (W.D. Tex. May 10, 2021) (rejecting employer's argument that plaintiff had failed to allege unsafe workplace claim where negligent act took place at an off-campus work retreat and not at that the workplace), *R. & R. adopted*, 2021 WL 4053187 (W.D. Tex. July 2, 2021). The Court finds that Plaintiff has alleged sufficient facts to allege a plausible unsafe workplace negligence claim against Gray Picture under Texas law.

The Henry Defendants argue that Plaintiff has failed to allege a viable unsafe workplace claim against them because "the Complaint does not include sufficient facts to establish the existence of an employer-employee relationship." Dkt. 5 at 18. As noted, however, when reviewing a motion to dismiss, the Court "must . . . accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Accordingly, the Henry Defendants' arguments are inappropriate at the Rule 12(b)(6) stage. *See Mace v. Republic Health Corp. of Rockwall Cnty.*, No. 3:21-CV-01709-M, 2022 WL 2918107, at *4 (N.D. Tex. July 25, 2022) (holding that defendant's denial that it employed plaintiff at the motion to dismiss stage did not conclusively establish that it was not a joint employer). A motion to dismiss for failure to state a claim does not concern the lawsuit's merits. *Sewell*, 974 F.3d at 582. The complaint survives if it contains sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. Whether Plaintiff ultimately proves that the Henry Defendants were her employers, Plaintiff's allegations are sufficient to withstand dismissal under Rule 12(b)(6). "The Court finds that Plaintiff's allegations as to Defendants being her joint employers are not wholly insubstantial or frivolous so as disregarded at this stage for lack of supporting evidence." *Mace*, 2022 WL 2918107, at *4.

Finally, although Plaintiff asserts both a general negligence claim and a negligence–unsafe workplace claim, her general negligence claim is identical to her unsafe workplace claim. *See* Plaintiff's Response, Dkt. 20 at 16 (discussing only unsafe workplace claim). Accordingly, the Court recommends that Plaintiff's general negligence claim should be dismissed as duplicative.

## C. Premises Liability

Plaintiff also asserts a premises liability claim against Defendants. To state a plausible claim for premises liability, the plaintiff must allege facts sufficient to show that (1) the defendant had actual or constructive knowledge of some condition on the premises; (2) the condition posed an unreasonable risk of harm to the plaintiff; (3) the defendant did not exercise reasonable care to reduce or to eliminate the risk; and (4) the defendant's failure to use such care proximately caused the plaintiff's personal injuries. *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471 (Tex. 2017).

Plaintiff alleges that Defendants possessed the premises where the sexual assault occurred and owed a legal duty to Plaintiff to keep their premises safe and to warn Plaintiff that there was an unreasonable risk of being sexually assaulted, and that Defendants breached that duty. Plaintiff's allegations are outside the scope of a proper premises liability claim under Texas law.

> [A] person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply.

*Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016); *see also In re Texas Dep't of Transp.*, 218 S.W.3d 74, 77 (Tex. 2007) ("A negligent activity claim arises from activity contemporaneous with the occurrence, whereas a premises defect claim is based on the property itself being unsafe."). "Negligence and premises liability claims thus are separate and distinct

15

theories of recovery, requiring plaintiffs to prove different, albeit similar, elements to secure judgment in their favor. Because negligence and premises liability claims are based on independent theories of recovery, we have held that they are not interchangeable." *United Scaffolding*, 537 S.W.3d at 471. Plaintiff has alleged a separate negligence claim and does not allege that a condition on the premises caused her injury; thus, her premises liability claim is duplicative.

**D. Negligent Hiring, Supervision, and Retention**

An employer who negligently hires, retains, or supervises an incompetent or unfit individual may be directly liable to a third party whose injury was proximately caused by the employee's negligent or intentional act. *Moore Freight Servs., Inc. v. Munoz*, 545 S.W.3d 85, 97 (Tex. App.—El Paso 2017, pet. denied.).[7] A claim of negligent hiring, supervision, or retention is not dependent on a finding that the employee was acting in the course and scope of his employment when the tortious act occurred. *Id.* "The cause of action is based on an employer's direct negligence instead of the employer's vicarious liability for the torts of its employees."

To state a plausible claim of negligent hiring, supervision, or retention, a plaintiff must allege sufficient facts to show that (1) the employer owed a legal duty to protect the plaintiff from the employee's actions, and (2) the plaintiff sustained damages proximately caused by the employer's breach of that legal duty. *Id.* An employer has a general duty to adequately hire, supervise, train, and retain competent employees. *Castillo v. Gared, Inc.,* 1 S.W.3d 781, 786 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Houser v. Smith*, 968 S.W.2d 542, 544 (Tex. App.—Austin 1998, no pet.)

Plaintiff alleges that Gray Picture and the Henry Defendants were Herrera's employers and that they negligently hired, supervised, and retained Herrera, which proximately caused her sexual

---

[7] These causes of action also extend to independent contractor relationships. *Mireles v. Ashley*, 201 S.W.3d 779, 782 (Tex. App.—Amarillo 2006, no pet.).

16

assault. Plaintiff further alleges that Defendants were on notice of potential harm to her because Herrera openly boasted that Plaintiff would be staying in his hotel room. While the evidence may later be held to be insufficient to prove by a preponderance that Defendants negligently hired, supervised, and retained Herrera, Plaintiff's allegations are sufficient to allege a plausible claim of relief and withstand dismissal under Rule 12(b)(6). *See Adhikari v. KBR Inc.*, No. 4:16-CV-2478, 2017 WL 4237923, at *10 (S.D. Tex. Sept. 25, 2017) (holding that plaintiffs sufficiently pled their claims for negligent hiring and negligent supervision where they pled each of these elements).

### E. Conclusion as to Motions to Dismiss

For these reasons, the undersigned Magistrate Judge recommends that the District Court grant in part and deny in part Defendants' motions to dismiss, as summarized below.

### IV. Motion for Sanctions

Federal Rule of Civil Procedure 11(b) imposes a duty on attorneys when presenting a filing to the court to certify, after a reasonable inquiry, that "the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," FED. R. CIV. P. 11(b)(2), and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery," FED. R. CIV. P. 11(b)(3). However, "Rule 11 does not require that the legal theory espoused in a filing prevail." *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 793 (5th Cir. 1993). Accordingly, "a trial court should not impose Rule 11 sanctions for advocacy of a plausible legal theory, particularly where . . . the law is arguably unclear." *Id.* at 794.

The Henry Defendants argue that Plaintiff's counsel should be sanctioned for asserting forced labor and sex trafficking claims against them, contending that those claims are "brazenly implausible." Dkt. 4 at 6. While the Court finds that Plaintiff's forced labor and trafficking claims

against the Henry Defendants fail to state a claim under Rule 12(b)(6), those claims "are not so obviously foreclosed by precedent as to make them legally indefensible." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 529 (5th Cir. 2016). Thus, the filings do not indicate that Plaintiff's counsel neglected their "duty of reasonable inquiry into the relevant law." *CJC Holdings*, 989 F.2d at 793. Nor do they show that Plaintiff's claims have no evidentiary support. Trial courts must be cautious about imposing Rule 11 sanctions because "misapplication of Rule 11 can chill counsel's enthusiasm and stifle the creativity of litigants in pursuing novel factual or legal theories, contrary to the intent of its framers." *Id.* at 794 (cleaned up). Because Plaintiff's counsel "advanced arguments that, although creative, were not ridiculous," the Motion for Sanctions should be denied. *SnoWizard*, 833 F.3d at 529 (affirming denial of sanctions where plaintiff's arguments were creative but not "ridiculous").

## V. Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court:

1. **DENY** Defendants Thomas J. Henry and Thomas J. Henry Law, PLLC's Motion for Sanctions (Dkt. 4).

2. **GRANT IN PART and DENY IN PART** Defendants Thomas J. Henry and Thomas J. Henry Law, PLLC's Motion to Dismiss (Dkt. 5) and **DISMISS** Plaintiff's claims of general negligence, premises liability, and forced labor and sex trafficking under the Trafficking Victim's Protection Reauthorization Act, and Section 98.001 of the Texas Civil Practices and Remedies Code.

3. **GRANT IN PART and DENY IN PART** Defendants Robert T. Herrera and Gray Picture, LLC's Motion to Dismiss (Dkt. 18) and **DISMISS** Plaintiff's claims of general negligence, premises liability, and forced labor claim under the Trafficking Victim's Protection Reauthorization Act and Section 98.001 of the Texas Civil Practices and Remedies Code against both Herrera and Gray Picture, and **DISMISS** Plaintiff's unsafe workplace negligence claim against Herrera individually.

If the District Court accepts these recommendations, the following claims will remain pending:

1. Against Thomas J. Henry and Thomas J. Henry Law, PLLC: unsafe workplace negligence and negligent hiring, supervision, and retention.

2. Against Robert T. Herrera and Gray Picture, LLC: negligent hiring, supervision, and retention, and sex trafficking under the Trafficking Victim's Protection Reauthorization Act and Section 98.001 of the Texas Civil Practices and Remedies Code.

3. Against Robert T. Herrera: assault.

4. Against Gray Picture, LLC: negligence based on an unsafe worklplace.

**IT IS ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## VI. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on November 7, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE